```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  1/16/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
GABINO GENAO                                                       :
:
                              Plaintiff,                           :
:                    24-cv-2077 (LJL)
               -v-                                                 :
:                    OPINION AND ORDER
ELVIS RUIZ, JR., et al.,                                           :
:
:
                              Defendants.                          :
:
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Gabino Genao ("Plaintiff"), who is appearing *pro se*, brings this action against Defendants Elvis Ruiz Jr., Kenneth Stukes, Robin Collins, Tamara Fee, Sharon Forbes, Eugenio Oliva, Avi Trope, John Does 1–2, and the City of New York (the "City") (collectively, "Defendants") in connection with his pretrial detention at various facilities on Rikers Island. The City of New York moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint for failure to state a claim to relief. Dkt. No. 27.

For the following reasons, the motion to dismiss is granted.

## BACKGROUND

For purposes of this motion, the Court accepts as true the allegations of Plaintiff's complaint and the documents of which the Court may take judicial notice. *See Simon v. Fed. Prison Indus. Inc.*, 2024 WL 3487940, at *1 (S.D.N.Y. July 18, 2024); *see also Pearson v. Gesner*, 2025 WL 77229, at *14–15 (2d Cir. Jan. 13, 2025) (discussing judicially noticeable documents). The Court construes a *pro se* plaintiff's complaint liberally and broadly to state the

strongest claims it suggests. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

While incarcerated at the North Infirmary Command (N.I.C.), Plaintiff was denied contact visitation in June 2021 due to two infractions dated February 29, 2020, and June 5, 2020. Dkt. No. 1 at 7–8, 12–13, 16–17, Ex. B at ECF 26–27.[1] Plaintiff initiated an Article 78 proceeding regarding this restriction in the Supreme Court of Bronx County, arguing that the infractions had been dismissed for due process violations. *Id.*, Ex. B at ECF 19, 21. The Article 78 hearing was scheduled for August 14, 2021. *Id.*, Ex. B at ECF 19.[2]

On the same day as Plaintiff's Article 78 hearing, Defendant Ruiz Jr., Captain of OSIU, threatened to transfer Plaintiff "around the world," which Plaintiff understood as a threat to transfer him to multiple facilities where he would be abused by the inmates. *Id.* at 22, 75, 106. Five days later, on August 19, 2021, Plaintiff was transferred to the Anna M. Kross Center (A.M.K.C.), where he was informed that no housing was available and was instructed to sleep in the recreation room. *Id.* at 39. Within five minutes of settling in, approximately ten prisoners attacked Plaintiff, kicking him and striking him with closed fists as he curled up on the floor, covering his face. *Id.* at 40, 44–45, 48. During the ten-minute attack, Plaintiff's head was stomped on and struck against the floor, and he was stabbed in the lower back. *Id.* at 46, 48, 51. The assault left Plaintiff with blurry vision, hearing loss, concussion symptoms, and head trauma, in addition to wounds on the face, head, and back. *Id.* at 49, 52, 65. Despite these

---

[1] Pin cites prefixed by "ECF" refer to the page numbers at the top of the page in the ECF filing.
[2] Elsewhere in the complaint, Plaintiff states that hearing occurred on August 18, 2021. Dkt. No. 1 at 21. The date of hearing is not relevant for the purposes of this motion.

injuries, Plaintiff was denied medical attention and was instead placed in an intake holding pen. *Id.* at 59. He did not receive any medical care until five or six days later. *Id.* at 61.[3]

On August 25, 2021, Plaintiff was escorted to the clinic of Defendant Oliva, a physician at A.M.K.C., where Plaintiff requested further evaluation and treatment for his injuries, citing fluid leaking from his ears and his history of traumatic brain injury. *Id.* at 63–65, 70. Defendant Trope, a medical administrator at A.M.K.C., and Defendant Oliva denied the request. *Id.* at 67, 71. Trope stated that Plaintiff would see a neurologist within two weeks. *Id.* at 67.

Between August 25 and September 11, 2021, Plaintiff was transferred three times: first to the Robert N. Davoren Complex (R.N.D.C.), then to the George R. Vierno Center (G.R.V.C.), and finally back to N.I.C. *Id.* 72, 83, 88. During this period, Plaintiff's medical requests were denied by officers at both R.N.D.C. and G.R.V.C., *id.* at 77, 85, and he was not examined by a physician until September 14, 2021, after his return to N.I.C., *id.* at 90.

Upon examination, the physician determined that further evaluation was necessary and referred Plaintiff to Bellevue Hospital for an MRI/CT scan and an audiologist examination, despite opposition from Department of Correction staff. *Id.* at 90–96. The MRI/CT scan results were negative. *Id.* at 97. On or around September 22, 2021, an audiologist diagnosed Plaintiff with bilateral hearing loss. *Id.* at 100. Plaintiff continues to experience inner ear pain, vertigo, tinnitus, and hearing loss, and difficulties with walking. *Id.* at 108, 111.

On or about October 18, 2021, Plaintiff filed a Notice of Claim with the Office of the New York City Comptroller, which was delivered on October 29, 2021.[4] *Id.* at 113, Ex. B at

---

[3] Plaintiff alleges that he was left at A.M.K.C. for six days without receiving medical attention, Dkt. No. 1 at 61, but also alleges that he was escorted to Oliva's clinic five days after the attack on August 25, 2021, *id.* at 63.

[4] In Plaintiff's email exchange with the Office of the Comptroller, Plaintiff dated the Notice of Claim as October 13, 2021. Dkt. No. 1 at 58.

ECF 56. However, during a conversation with the Office of the Comptroller, a staff member informed Plaintiff that the Notice of Claim was "never received." *Id.*, Ex. B at ECF 58. Plaintiff attempted to follow up with the Office of the Comptroller again on May, 16, 2022, but received no response. *Id.*, Ex. B at ECF 59.

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing the complaint on March 15, 2024. Dkt. No. 1. Construed liberally, Plaintiff's complaint alleges violations of the First, Eighth, and Fourteenth Amendments of the United States Constitution, as well as Article 1, Sections 5, 8, 9, 11, and 12 of the New York State Constitution. *Id.* at ECF 16. Plaintiff seeks $4 million in total damages, consisting of $1 million each for compensatory damages, punitive damages, future damages, and consequential damages. *Id.*

The initial pre-trial conference was held on August 9, 2024. Dkt. No. 21. The Court issued an order granting Defendants leave to file a motion to dismiss or for summary judgment. Dkt. No. 22. The Court also notified Plaintiff of its intent to convert Defendants' motion to dismiss into a motion for summary judgment, attaching the full text of the Notice to Pro Se Litigant Who Opposes a Rule 12 Motions Supported by Matters Outside the Pleadings, in accordance to Local Civil Rule 12.1. *Id.*[5]

---

[5] The notice states:
> "The defendant in this case has moved to dismiss or for judgment on the pleadings pursuant to Rule 12(b) or 12(c) of the Federal Rules of Civil Procedure, and has submitted additional written materials. This means that the defendant has asked the court to decide this case without a trial based on these written materials. You are warned that the Court may treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For this reason, THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION by filing sworn affidavits or other papers as required by Rule 56(e). An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in

Defendant City of New York filed the instant motion to dismiss on behalf of itself on September 16, 2024, along with a supporting memorandum of law and declaration.[6] Dkt. Nos. 27–29.  As part of the motion to dismiss, the City submitted a General Release signed by Plaintiff on December 16, 2022.  Dkt. No. 28-1, Ex. A at ECF 4–5.  The General Release is part of a settlement agreement between Plaintiff and the City in *Genao v. City of New York et al.*, 20 Civ. 4872 (MKV) (S.D.N.Y.).  *Id.*, Ex. A at ECF 4.  In the General Release, Plaintiff agreed to discharge all civil rights claims against the City arising before December 16, 2022, except for seven pending claims that do not include the present action.  *Id.*  The General Release states in relevant part:

> I, Gabino Genao, . . . do hereby release and discharge defendants the City of New York . . . their successors and assigns and all past and present officials, employees, representatives, and agents of the City of New York or any entity represented by the Office of the Corporation Counsel, collectively the "RELEASEES" from any and all liability, claims, or rights of action alleging a violation of my civil rights and any and all related state law claims from the beginning of the world to the date of this General Release, including claims for costs, expenses, and attorney's fees, with the exception of [seven] claims.

---

evidence at trial.  The full text of Rule 56 of the Federal Rules of Civil Procedure is attached.

In short, Rule 56 provides that you may NOT oppose the defendant's motion simply by relying upon the allegations in your complaint.  Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial.  Any witness statements must be in the form of affidavits. You may submit your own affidavit and/or the affidavits of others.  You may submit affidavits that were prepared specifically in response to defendant's motion. If you do not respond to the motion on time with affidavits or documentary evidence contradicting the facts asserted by the defendant, the court may accept defendant's factual assertions as true.  Judgment may then be entered in defendant's favor without a trial."

Local Civil Rule 12.1.

[6] The motion to dismiss expressly states that it is not made on behalf of Defendants Forbes, Fee, and Ruiz Jr.  Dkt. No. 28 at ECF 1.  However, it is unclear whether this exclusion extends to the remaining Defendants.  *Id.*

*Id.*

Plaintiff filed two memoranda of law opposing the motion to dismiss on October 15, 2024, and October 17, 2024, along with a Stipulation of Settlement with the City that contains the same language as the General Release. Dkt. Nos. 29–30. The City replied on December 23, 2024. Dkt. No. 31.

## LEGAL STANDARDS

Under the Federal Rules of Civil Procedure, "[i]f ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The decision whether to convert is within the Court's discretion. *Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co.*, 2008 WL 190310, at *3 (S.D.N.Y. Jan. 16, 2008). A *pro se* party, likely unaware of the consequences of failing to provide evidence, must receive "unequivocal notice of the meaning and consequences of conversion to summary judgment." *Hernandez v. Coffey*, 582 F.3d 303, 307–08 (2d Cir. 2009) (internal quotation marks omitted). This requirement is satisfied if the *pro se* party receives a copy of Local Civil Rule 12.1. *See id.*, at n. 2; *Henderson v. Alvarez*, 2020 WL 2571013, at *5 (S.D.N.Y. May 21, 2020).

The City supported its motion to dismiss with the Stipulation of Settlement outside the pleadings. Dkt. No. 28-1, Ex. A at ECF 4–5. Plaintiff was properly notified of the meaning and consequences of conversion to summary judgment upon receiving a copy of Local Civil Rule 12.1 in the written order issued on August 9, 2024, and he filed two separate opposition briefs. Dkt. Nos. 22, 29–30. Accordingly, the Court converts the City of New York's motion to dismiss into one for summary judgment. *See Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 (2d Cir. 2014).

Summary judgment is appropriate when the record shows that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view all facts "in the light most favorable to the non-moving party." *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). The moving party bears the burden of demonstrating that "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), after which the burden shifts to the non-moving party to show a genuine dispute, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

Although "special solicitude" is given to *pro se* litigants on motions for summary judgment, *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (internal quotation marks and citations omitted), "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law," *Triestman*, 470 F.3d at 477 (internal quotation marks and citation omitted). The obligation to construe *pro se* submissions liberally "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks and citation omitted).

# DISCUSSION

The City argues that the complaint should be dismissed because Plaintiff's claims are barred by the General Release. Dkt. No. 28 at ECF 1. In response, and construed liberally, Plaintiff raises eight arguments challenging the validity of the General Release: (1) the language of the General Release differs from what Plaintiff orally agreed to during the settlement conference; (2) the General Release was executed by fraud; (3) the City acted in bad faith; (4) the General Release isunconscionable; (5) the General Release was executed under duress; (6) Plaintiff is allowed to pursue relief under his sustained Article 78 order; (7) Plaintiff is entitled to special solicitude as a *pro se* litigant; and (8) the prior knowledge exclusion doctrine applies. Dkt. No. 29 at ECF 3–6; Dkt. No. 30 at ECF 1.

## I.     The General Release Bars Plaintiff's Claims

It is well established that "settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Mateo v. Carinha*, 799 F. App'x 51, 53 (2d Cir. 2020) (quoting *Collins v. Harrison–Bode*, 303 F.3d 429, 433 (2d Cir. 2002)) (alteration omitted); *Brown v. City of S. Burlington, Vt.*, 393 F.3d 337, 343 (2d Cir. 2004) ("A release is a contract." (citation omitted)). When a release is clear and unambiguous, "effect must be given to the intent of the parties as indicated by the language employed." *Tromp v. City of New York*, 465 Fed. Appx. 50, 52 (2d Cir. 2012) (citations omitted); *see Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir. 1998) ("[A] release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced."). Under New York law, a valid release constitutes a "complete bar to an action on a claim which is the subject of the release." *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) (quoting *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011)). That a settlement is not filed on the

docket does not destroy its enforceability. *See Frank v. Gaos,* 586 U.S. 485, 492 (2019) ("In ordinary non-class litigation, parties are free to settle their disputes on their own terms, and plaintiffs may voluntarily dismiss their claims without a court order."); Fed. R. Civ. P. 41(a)(1)(A).

The broad terms of the General Release clearly and unambiguously bar Plaintiff's claims. The General Release discharges the City from "*any and all* liability, claims, or rights of action alleging a violation of [Plaintiff's] civil rights . . . , from the beginning of the world to the date of this General Release [December 16, 2022]." Dkt. No. 28-1 Ex. A at ECF 4–5 (emphasis added). When general language is used in the release, "the release is to be construed most strongly against the releaser," and "the burden is on the releaser to establish that the release should be limited." *Middle E. Banking Co. v. State Street Bank Int'l,* 821 F.2d 897, 907 (2d Cir. 1987). The General Release contains seven exceptions, none of which applies to the present case. *See* Dkt. No. 28-1, Ex. A at ECF 4. Plaintiff alleges that the civil rights violations occurred during August 21, 2021, through September 22, 2021, more than a year before he signed the General Release. Dkt. No. 1 at ECF 5. Therefore, the release terms clearly and unambiguously encompass Plaintiff's claims in the instant action.

## II. Plaintiff's Challenges to the General Release Fail

Plaintiff argues that he did not intend for the General Release to reach the present claims. Dkt. No. 29 at ECF 3. Specifically, Plaintiff alleges that he did not agree to release the City from future claims at the settlement conference. *Id.* at ECF 5. "Where a contract is clear and unambiguous on its face, the intent of the parties must be gleaned within the four corners of the instrument, and not from extrinsic evidence." *RJE Corp. v. Northville Indus. Corp.,* 329 F.3d 310, 314 (2d Cir. 2003) (citations omitted); *see Mateo*, 799 F. App'x at 54 ("The language of the notably broad General Release is clear on its face. In such cases, court should generally interpret

9

the contract without reference to extrinsic evidence."). A clear, unambiguous contract will be enforced according to its terms, "regardless of one party's claim that he intended something else." *Kay–R Elec. Corp. v. Stone & Webster Const. Co., Inc.*, 23 F.3d 55, 58 (2d Cir. 1994) (citation omitted); *accord Uribe v. Merchants Bank of N.Y.*, 693 N.E.2d 740 (N.Y. 1998).

Since the General Release is clear and unambiguous, the Court must interpret the parties' intent from the four corners of the agreement without reference to extrinsic evidence. The intent of the parties to release "any and all" claims is clear from the broad language of the General Release. Dkt. No. 28-1, Ex. A at ECF 4. That the parties agreed to carve out seven cases but not the instant one indicates the parties' intent to release the present claims. *Id.* Courts have routinely dismissed claims where a plaintiff, having entered a settlement and signed a general release, later asserts similar claims that could have been brought in the earlier settled action. *See, e.g., Tromp*, 465 Fed. App'x. at 52 (affirming dismissal of claims barred by general release as they could have been included in prior action); *Northgate Electric v. Barr & Barr*, 877 N.Y.S.2d 36, 37 (1st Dep't 2009) ("If plaintiff had wished to except its delay claim from the release, it should have included plain language to that effect in the release.").

Plaintiff was aware of his intentions to bring the present claims when he allegedly filed a Notice of Claim with the Office of the New York City Comptroller on or about October 18, 2021, more than a year before he signed the General Release. Dkt. No. 1 at 113; Dkt. No. 28-1, Ex. A at ECF 5. Even if he was unaware, "a release may encompass unknown claims, . . . if the parties so intend and the agreement is 'fairly and knowingly made.'" *Centro Empresarial Cempresa*, 952 N.E.2d at 1000 (citation omitted). "Words of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which

10

might then have been adjudicated as a result of pre-existent controversies." *Mateo*, 799 F. App'x at 53 (quoting *A.A. Truck Renting Corp. v. Navistar, Inc.*, 916 N.Y.S.2d 194, 196 (2d Dep't 2011) (citation omitted)).

Plaintiff's argument that he was fraudulently induced into executing the General Release based on language not discussed during negotiations is unavailing. Dkt. No. 29 at ECF 5. Under New York law, fraudulent inducement requires, among other things, proof that the defendant made a "material" false representation and that the plaintiff "reasonably relied" on it. *Wall v. CSX Transp. Inc.*, 471 F.3d 410, 415–16 (2d Cir. 2006). Plaintiff has not identified a false representation. None of the alleged misrepresentations is false, let alone one that he relied upon. *See* Dkt. No. 29 at ECF 4–5. Plaintiff's email exchange with Assistant Corporation Counsel Elissa Jacobs on December 12, 2022, in which he explicitly requested carve-outs to clarify that he was not releasing the City from "all [his] other cases," demonstrates his clear understanding of the broad terms of the General Release. *Id.* at ECF 28. Furthermore, Plaintiff's decision to carve out seven specific cases reinforces his awareness of its terms and effect. *See* Dkt. No. 28-1, Ex. A at ECF 4.

Plaintiff also asserts that the City acted in bad faith by initially failing to include an exception for the seven cases in the General Release and retaliating him for reaching a settlement. Dkt. No. 29 at ECF 7–8. In New York, the implied covenant of good faith and fair dealing applies to a party's performance of a contract in a way that frustrates the contract's purpose and parties' intent. *See Bank of China v. Chan*, 937 F.2d 780, 789 (2d Cir. 1991); *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407–08 (2d Cir. 2006), *certified question accepted*, 857 N.E.2d 528 (N.Y. 2006), and *certified question answered*, 864 N.E.2d 1272 (N.Y. 2007). However, the alleged error occurred before Plaintiff accepted the contract, not during its

performance. *See* Dkt. No. 29 at ECF 28–29. Moreover, as analyzed above, the plain language of the General Release indicates that the parties intended to release "any and all" claims except for seven specific cases. Dkt. No. 28-1 Ex. A at ECF 4. The covenant cannot be used to "imply obligations inconsistent with other terms of the contractual relationship[.]" *Singh v. City of New York*, 217 N.E.3d 1, 5, *reargument denied*, 219 N.E.3d 362 (N.Y. 2023). Therefore, a finding of bad faith is unwarranted.

The initial omission of the seven exceptions is not sufficient for a defense of unconscionability either. "A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made[.]" *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988). While "deceptive or high-pressured tactics" may indicate procedural unconscionability, the facts do not plausibly suggest deceit by the City. Although the carve-outs were initially omitted from the General Release, they were properly included in the Stipulation of Settlement. Dkt. No. 29 at ECF 10. Following Plaintiff's email on December 12, 2022, the City promptly acknowledged the error and corrected the General Release. *Id.* at ECF 10, 29. Plaintiff executed the corrected version without raising further objections. *See id.* at ECF 28–29. Nor does the General Release exhibit substantive unconscionability, which examines whether the terms of a contract were "unreasonably favorable to the party against whom unconscionability is urged." *Gillman*, 534 N.E.2d at 829. As discussed below, Courts in this Circuit routinely enforces the standard language in the General Release.

Plaintiff argues that the City forced him to agree to the broad language of the General Release on a "take it or leave it" basis, which the Court construes liberally as a claim of duress. Dkt. No. 29 at ECF 5. Duress requires, *inter alia*, a wrongful threat. *Kamerman v. Steinberg*,

12

891 F.2d 424, 431 (2d Cir. 1989). However, "the fact that a party may have engaged in hard bargaining is insufficient to establish duress." *In re Vargas Realty Enters., Inc.*, 440 B.R. 224, 238 (Bankr. S.D.N.Y. 2010) (citation omitted); *see Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 127 (S.D.N.Y. 2012) ("Mere hard bargaining positions, if lawful . . . will not be deemed duress." (citation omitted)), *aff'd*, 556 F. App'x 56 (2d Cir. 2014). In the absence of a wrongful threat or other improper action by the other party, there can be no claim of duress.

Plaintiff's sustained Article 78 order has no effect on the General Release's enforceability. First, the Article 78 order granted only the restoration of Plaintiff's contact visitation. Dkt. No. 30 at ECF 2. In fact, the issuance of the Article 78 order on September 22, 2021—over a year before the General Release—reinforces that Plaintiff had the intention to bring the present claims and understood the implications of the General Release's broad terms. *Id.*

Plaintiff's *pro se* status when he executed the settlement agreement does not alter the analysis. Dkt. No. 29 at ECF 3. To the extent Plaintiff believed the General Release would not bar future claims*, id.* at ECF 6, the unambiguous language of the General Release—not Plaintiff's subjective understanding—governs. *See HOP Energy, L.L.C. v. Loc. 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir. 2012) ("With unambiguous contracts, a party's subjective intent and understanding of the terms is irrelevant."); *Dinkins v. Decoteau*, 2016 WL 3637169, at *3 (S.D.N.Y. June 29, 2016). A lack of sophistication, even an inability to understand English, does not in itself absolve a party's contractual obligations. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010); *see, e.g.*, *Wen v. N.Y.C. Reg'l Ctr., LLC*, 695 F. Supp. 3d 517 (S.D.N.Y. 2023), (inability to read English does not relieve investors of contractual obligation), *aff'd*, 2024 WL 4180521 (2d Cir. Sept. 13, 2024); *Kassab v. Marco*

13

*Shoes Inc.*, 723 N.Y.S.2d 352 (1st Dep't 2001) (enforcing sublease against signor alleging improficiency in English). Courts in this Circuit have consistently enforced similar, if not broader, releases in civil rights actions brought by *pro se* litigants. *See, e.g.*, *Johnson v. City of New York*, 2023 WL 5629232, at *5 (S.D.N.Y. Aug. 31, 2023) (rejecting *pro se* litigant's claim that he was unaware the release would discharge the underlying claims); *Staples v. Acolatza*, 2016 WL 4533560, at *3 (S.D.N.Y. Mar. 9, 2016) ("General releases are enforceable as to civil rights claims . . . notwithstanding a party's *pro se* status." (citations omitted)); *Cuadrado v. Zito*, 2014 WL 1508609, at *3 (S.D.N.Y. Mar. 21, 2014) (rejecting *pro se* litigant's argument that he did not understand the release would waive the underlying claims).

Finally, Plaintiff contends that his claims are "reserved" under the prior knowledge exclusion doctrine, given the City's awareness of his future claims. Dkt. No. 29 at ECF 4. However, the prior knowledge exclusion doctrine applies narrowly to the denial of insurance coverage and is therefore inapplicable to this case. *See, e.g.*, *Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.*, 199 F. App'x 29, 31 (2d Cir. 2006); *N. River Ins. Co. v. Leifer*, 2023 WL 2978970, at *1 (2d Cir. 2023); *CPA Mut. Ins. Co. of Am. Risk Retention Grp. v. Weiss & Co.*, 915 N.Y.S.2d 57, 57 (1st Dep't 2011).

### III.    Leave to Amend

Although district courts should generally grant a *pro se* plaintiff an opportunity to amend a complaint, "leave to amend need not be granted when amendment would be futile." *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016); *accord Lamb v. Cuomo*, 698 F. App'x 1, 2 (2d Cir. 2017).

Based on the Court's foregoing analysis of the enforceability of the General Release, granting Plaintiff leave to amend would be futile. The General Release is broad and encompasses the time period during which Plaintiff's civil rights were allegedly violated.

Evidence in the record present no indication that he could reasonably challenge the validity of the Release. *See, e.g.*, *Borden v. City of New York*, 2017 WL 744593, at *5 (S.D.N.Y. Feb. 24, 2017) (finding leave to amend futile where claim was barred by general release); *Carter v. Ponte*, No. 17-CV-1830, 2018 WL 4680995, at *6 (S.D.N.Y. Sept. 28, 2018) (denying leave to amend where general release bars the underlying claims); *Haskins v. Doe*, 2019 WL 4194150, at *4 (S.D.N.Y. Sept. 4, 2019) (denying leave to amend where underlying claims are barred by general release).

## CONCLUSION

Defendant City of New York's motion to dismiss is GRANTED, and the claims against the City are dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the City of New York as Defendant.

SO ORDERED.

Dated: January 16, 2025
         New York, New York

                                              _____
                                              LEWIS J. LIMAN
                                              United States District Judge